24CA1364 Peo v Beaumont 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1364
Jefferson County District Court No. 23CR1853
Honorable Jason Carrithers, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joel Allen Beaumont,

Defendant-Appellant.

---

SENTENCE AFFIRMED

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Kimberly Diego, Denver, Colorado, for Defendant-Appellant

¶ 1     After pleading guilty to second degree assault resulting in strangulation, the district court sentenced defendant, Joel Allen Beaumont, to five years in the custody of the Department of Corrections.  Beaumont appeals and claims that the district court abused its discretion when it imposed the sentence.  We affirm.

I.     Background

¶ 2     In 2023, Beaumont and his girlfriend, S.P., were sitting in Beaumont's car one evening.  S.P. was in the driver's seat and Beaumont was in the passenger seat.  Beaumont had been drinking and the two started arguing over their finances, lack of shelter, and food.  The argument escalated, and Beamont exited the car for several minutes.  When he got back in the car, Beaumont punched S.P.'s face with so much force that she "saw light" and felt pain, which she described as "more severe than being in a car accident."  S.P. later reported to law enforcement that she "immediately knew something major was wrong[,] believed her face was broken," and had to go to the hospital.

¶ 3     S.P. drove herself and Beaumont to the hospital.  Beaumont did most of the talking and told hospital staff that S.P. suffered from a diagnosed sleeping disorder and fell and hit her face on a

1

table.  S.P. later told law enforcement that she "went along with what [Beaumont] was telling [hospital staff] because she was afraid he would retaliate."  The doctor who treated S.P. told her she had a broken auxiliary (and possibly orbital) bone and a broken cheekbone.  The doctor also told her she needed to see a plastic surgeon because her injuries could cause facial drooping.

¶ 4     After she was discharged from the hospital in the early morning, S.P. drove herself and Beaumont to Haven of Hope to get breakfast.  Beaumont remained in the car while S.P. went inside.  The facilities manager saw S.P.'s injuries and became concerned that something was wrong.  The manager called the police and kept S.P. inside while police took custody of Beaumont.

¶ 5     Beaumont was charged with second degree assault resulting in serious bodily injury and third degree assault.  He ultimately pleaded guilty to second degree assault resulting in strangulation, which lowered the sentence's presumptive range from five to sixteen years to two to eight years.  § 18-3-203(1)(i), C.R.S. 2024; §§ 18-1.3-406(2)(a)(II)(C), -401(10)(b)(XII), (XVIII), C.R.S. 2024.  The prosecution agreed to dismiss the remaining counts in exchange for Beaumont's guilty plea to the additional charge.

¶ 6      Shortly thereafter, Beaumont was accepted into Harbor Light, a six-month inpatient relapse prevention treatment program. While at Harbor Light, Beaumont participated in individual therapy, group therapy, and substance abuse treatment. Multiple people Beaumont interacted with at Harbor Light sent the sentencing court letters, progress reports, and general statements supporting his rehabilitation efforts.

¶ 7      During the sentencing hearing, S.P. gave a victim impact statement. She described the history of violence in her relationship with Beaumont and the destructive impact he had on her life. At the hearing, the prosecutor also mentioned that S.P. "has maintained since the beginning that she believes Mr. Beaumont should be in prison."

¶ 8      Defense counsel offered the following mitigating circumstances at the sentencing hearing: (1) this was Beaumont's first felony conviction; (2) despite a history of allegations against him, he had no convictions for violent domestic offenses; (3) he had been monitored for sobriety; (4) he completed a thirteen-week parenting class to improve his relationship with his children; (5) he was close to graduating from his six-month inpatient program; (6) he had

3

received individual therapy and group therapy and had shown progress in both; and (7) several service providers and staff at Harbor Light wrote letters recognizing his personal growth and in support of a noncustodial sentence. Counsel also told the court that, following graduation from his inpatient program, Beaumont could continue in Harbor Light's eighteen-month sober living capacity program, where he would receive testing, counseling, and assistance finding employment.

¶ 9 Beaumont also testified that he had "worked hard on [him]self to be a better person" and apologized to S.P. and S.P.'s family for his actions. He stated that he was promoted to "residential facilitator" at Harbor Light and helped the staff and others in recovery after graduation.

¶ 10 After considering the severity of the offense and the mitigating factors, including Beaumont's rehabilitation efforts, leadership appointments, and the letters offered in support of a probationary sentence, the court sentenced Beaumont to five years in the custody of the Department of Corrections and awarded him 172 days of presentence confinement credit.

## II.    Analysis

Beaumont argues that the district court abused its discretion when it imposed a five-year custodial sentence.  Specifically, he claims the court (1) failed to appropriately consider mitigating factors and his rehabilitative potential; (2) imposed a sentence that was an "aberration" when compared to other five-year or lower sentences imposed for more serious crimes; and (3) heavily relied on testimony relating to conduct that Beaumont had not been charged with.  We disagree with each contention.

### A.    Standard of Review

On appellate review of a sentence, the sentencing court must be afforded deference because of trial judge's familiarity with the circumstances of the case.  *People v. Watkins*, 684 P.2d 234, 239 (Colo. 1984).  A trial judge has broad discretion when imposing a sentence, and the sentence imposed will not be overturned in the absence of a clear abuse of discretion.  *People v. Fuller*, 791 P.2d 702, 708 (Colo. 1990).

Discretion is abused only when no reasonable person would take the view adopted by the trial court and that view is manifestly arbitrary, unreasonable, or unfair.  *People v. Wilson,* 2014 COA 114,

¶ 35; *see also People v. Oglethorpe*, 87 P.3d 129, 136-37 (Colo. App. 2003). When a sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence. *People v. Hoover*, 165 P.3d 784, 802 (Colo. App. 2006).

### B. Mitigating Factors

¶ 14 Beaumont first argues that the sentencing court did not appropriately consider mitigating factors, including Beaumont's character and his rehabilitative potential, when it imposed his sentence. We disagree.

¶ 15 Sentencing is discretionary by nature. *People v. Campbell*, 58 P.3d 1080, 1086 (Colo. App. 2002), *aff'd*, 73 P.3d 11 (Colo. 2003). The sentencing court must consider the nature of the offense, the character and rehabilitative potential of the defendant, development and respect for the law, deterrence of crime, and public protection. *Id.* at 1087; *People v. Stroud*, 2014 COA 58, ¶ 52; *Fuller*, 791 P.2d at 708.

¶ 16 The court may find one aggravating factor more compelling than another, and it only abuses its discretion when it places an

"undue emphasis on any one of these factors to the exclusion of the others." *Campbell*, 58 P.3d at 1087. Additionally, a sentencing court does not abuse its discretion if it considers aggravating factors to be more compelling than mitigating factors, nor does that indicate that the court failed to consider mitigating factors. *People v. Martinez*, 32 P.3d 582, 585 (Colo. App. 2001); *People v. Hernandez-Luis*, 879 P.2d 429, 430 (Colo. App. 1994).

¶ 17    During the sentencing hearing, the court heard testimony regarding Beaumont's rehabilitation efforts from defense counsel, Harbor Light's program director, and Beaumont himself. The court also reviewed the packet submitted by defense counsel, which contained numerous letters describing Beaumont's personal growth and potential for rehabilitation in support of a probationary sentence.

¶ 18    While the sentencing court commended Beaumont on his sobriety efforts and the fact that this was his first felony, it recognized that Beaumont's offense was "an assault on another person" and found that the "severity of the offense outweighed everything else." The court noted that the damage Beaumont

inflicted on S.P. would take her years to recover from, while it only took five months for Beaumont to recover from his "problem."

¶ 19    The sentencing court properly considered the severity of Beaumont's offence, his rehabilitative efforts and potential, his history with the criminal justice system, and the importance of ensuring that Beaumont would not inflict similar trauma on anyone else.  In addition, the court noted that it considered the presentence confinement credit and the plea down from second degree assault resulting in serious bodily injury as mitigating factors.

## C.    Comparative Sentencing

¶ 20    Second, Beaumont argues that the sentencing court abused its discretion because his sentence was an anomaly when compared to sentences imposed in similarly situated defendants' cases.  We disagree.

¶ 21    Because Beaumont ultimately pleaded guilty to second degree assault resulting in strangulation, our analysis rests solely on Beaumont's guilty plea.

¶ 22    Presumptive ranges promote fairness and consistency within the judicial system while allowing flexibility for the sentencing court to exercise discretion in its sentencing decisions.  *See* § 18-1-

102.5(1), C.R.S. 2024; *see also Lopez v. People*, 113 P.3d 713, 725 (Colo. 2005). When imposing a sentence within a presumptive range, the court must state the basic reasons for imposing the sentence on the record. *People v. Watkins*, 613 P.2d 633, 636-37 (Colo. 1980). The statement of reasons need not be lengthy but should include the primary factual considerations bearing on the judge's sentencing decision. *People v. Kirby*, 2024 COA 20, ¶ 66; *People v. Torrez*, 2013 COA 37, ¶ 74. A detailed analysis is only necessary when the court imposes a sentence outside the presumptive range to justify the deviation. *See* § 18-1.3-401(6)-(7).

¶ 23 Beaumont claims that his sentence is an aberration based on a comparative sentencing analysis that defense counsel conducted.[1] Comparative sentencing only applies to extended proportionality reviews, which occur if an abbreviated proportionality review "gives rise to an inference of gross disproportionality" under the Eighth

---

[1] Upon a timely request, a defendant is entitled to an abbreviated proportionality review, which requires the court to compare "the gravity of the offense to the severity of the punishment to determine whether the defendant has raised an inference of gross disproportionality." *People v. Strock*, 252 P.3d 1148, 1157 (Colo. App. 2010) (citing *People v. McNally*, 143 P.3d 1062, 1063 (Colo. App. 2005)). Beaumont did not request an abbreviated proportionality review of his sentence.

Amendment. *People v. Strock*, 252 P.3d 1148, 1157 (Colo. App. 2010). If, as is the case here, a sentence is within the presumptive range for the offense, it is not grossly disproportionate. *See People v. Thomeczek*, 284 P.3d 110, 118 (Colo. App. 2011) (declining to engage in an extended proportionality review "because the sentence imposed by the trial court here fell within the presumptive range established by the legislature, [and] our abbreviated review leads us to conclude that the sentence is not grossly disproportionate and must be upheld").

¶ 24    Beaumont's five-year sentence falls within the presumptive range and is three years less than the maximum sentencing range allows. Whether defendants in other cases received lesser sentences is not indicative that a court abused its discretion because "reasonable pe[ople] c[an] differ as to the propriety of the action taken by the trial court." *Wilson*, ¶ 35 (quoting *Hoover*, 165 P.3d at 802). Our job is to determine whether the "decision fell within a range of reasonable options." *People v. Rhea*, 2014 COA 60 ¶ 58 (quoting *People v. Salazar*, 2012 CO 20, ¶ 32). A sentence of five years, which falls squarely within the presumptive range, is within the sentencing court's discretion.

## D. Accounts of Prior Domestic Violence

¶ 25    Third, Beaumont argues that the district court erred by relying heavily on S.P.'s accounts of Beaumont's prior domestic violence, even though Beaumont was never charged for any prior incidents. Again, we disagree.

¶ 26    S.P. provided a victim impact statement, but the court did not mention anything within the statement beyond acknowledging that it would take years for S.P. to recover from Beaumont's actions. When making sentencing decisions, the court may consider "conduct for which the offender was never charged, conduct for which charges were filed but later dismissed as part of a plea agreement, or [in some circumstances,] even conduct for which the offender was charged and subsequently acquitted." *People v. Tallwhiteman*, 124 P.3d 827, 837 (Colo. App. 2005).  Thus, regardless of the emphasis placed on S.P.'s statements, the court did not abuse its discretion when weighing the mitigating and aggravating factors.

¶ 27    Finally, if Beaumont was concerned or confused about the court's reasoning when it imposed his sentence, he had an obligation to ask for clarification when the opportunity presented

11

itself.  *See People v. Ruibal*, 2015 COA 55, ¶ 58, *aff'd*, 2018 CO 93.

At the conclusion of the hearing, the court asked Beaumont and the

prosecutor if either party had any questions regarding the sentence

or the reasons discussed, and both parties said they did not.

¶ 28     Accordingly, the court did not abuse its discretion when it

imposed Beaumont's five-year prison sentence.

### III.   Disposition

¶ 29     We affirm.

JUDGE FREYRE and JUDGE GOMEZ concur.